NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| JOHN EDWARDS STEVENS, | : | |
| Petitioner, | : | Civil Action No. 18-5228 |
| | : | |
| v. | : | |
| | : | **OPINION** |
| UNITED STATES OF AMERICA, | : | : |
| Respondent. | : | |
| | : | |

**CECCHI**, **District Judge**:

Presently before the Court is Petitioner John Edward Stevens's ("Petitioner") motion to vacate his sentence brought pursuant to 28 U.S.C. § 2255. ECF No. 1. Following an order to answer, the Government filed a response to the motion (ECF No. 23), to which Petitioner replied (ECF No. 27). After Petitioner's reply, Petitioner filed two more documents: a motion to appoint pro bono counsel (ECF No. 29) and a "supplement to answer" (ECF No. 30). For the reasons set forth below, this Court denies the motions to vacate and for counsel, and denies Petitioner a certificate of appealability.

## I.  BACKGROUND

On May 6, 2013, the Government filed a criminal complaint against Petitioner, alleging that, in April 2013, he had robbed a TD Bank located in Oakland, New Jersey, using what appeared to be a black handgun, and fled with $4,658.00 using a stolen vehicle. Docket No. 15-225 at ECF No. 1 at 3. Petitioner was arrested and interrogated shortly after the robbery, at which point he admitted to the robbery. Id. On November 8, 2013, the Government offered Petitioner a plea agreement in which Petitioner would stipulate to the general facts underlying the robbery and pleaded guilty to robbing the bank in violation of 18 U.S.C. § 2113(a) without a stipulated sentence

or recommended guidelines range. ECF No. 23-2. The 2013 Plea Agreement was set to expire on November 25, 2013, absent a signed agreement. Id. at 2. Petitioner and his counsel discussed the offer on November 20, 2013, and both agreed that taking a fact-stipulated plea without a recommended guidelines range was not in their best interests. *See* ECF No. 23-3. In fact, Petitioner explicitly rejected the terms of the agreement, believing that taking the plea would be akin to "writing a blank check" to the Government. Id. Further correspondence indicates that Petitioner remained opposed to the original offer through the end of 2013. ECF No. 23-5. With Petitioner's agreement, counsel sought to negotiate with the Government a plea agreement with a stipulated guidelines range. *See* id.

On January 15, 2014, after the initial plea offer had expired, the Government provided Petitioner's plea-attorney with a notice stating the Government's intent to file an enhanced penalty information under the three strikes provision of 18 U.S.C. § 3559(c). ECF No. 23-1 at 4, ¶ 12. Petitioner was thereafter indicted on May 13, 2015, for one count of bank robbery in violation of 18 U.S.C. § 2113(a), and one count of armed bank robbery in violation of 18 U.S.C. § 2113(d). Docket No. 15-225 at ECF No. 25. An enhanced penalty information seeking a life sentence under the three strikes provision was filed two weeks later on May 27, 2015. Docket No. 15-225 at ECF No. 29. On March 30, 2016, the Government filed a superseding enhanced penalty information again seeking a life sentence under the three strikes provision of 18 U.S.C. § 3559(c). Docket No. 15-225 at ECF No. 33. Faced with a potential life sentence, Petitioner was offered and ultimately accepted a Rule 11(c)(1)(C) plea agreement under which he would plead guilty to one count of armed bank robbery in violation of 18 U.S.C. § 2113(d) in exchange for a stipulated sentence of twenty years' imprisonment and three years of supervised release. Docket No. 15-225 at ECF No.

2

41. Petitioner signed that agreement on May 2, 2016, and ultimately pleaded guilty on May 4, 2016. *Id.*; *see also* Docket No. 15-225 at ECF No. 40. This Court thereafter sentenced Petitioner to the stipulated sentence on April 20, 2017. Docket No. 15-225 at ECF No. 45.

## II.  DISCUSSION

### A.  Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458–59 (D.N.J. 2003).

### B.  Analysis

### 1.  No evidentiary hearing is necessary in this matter

A district court need not hold an evidentiary hearing on a motion to vacate where "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Booth,* 432 F.3d 542, 546 (3d Cir. 2005); *United States v.*

*Day*, 969 F.2d 39, 41–42 (3d Cir. 1992). "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." *Judge v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); *see Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546.

To obtain a hearing, "a movant must simply allege a set of facts that is not frivolous or clearly contradicted by the record and that demonstrates (if assumed to be true) that he would plausibly be entitled to relief under *Strickland*." *United States v. Arrington*, 13 F.4th 331, 335 (3d Cir. 2021), *cert. denied*, No. 21-7239, 2022 WL 892205 (U.S. Mar. 28, 2022). "A hearing is warranted where, for example, resolution of the motion turns on credibility or disputed facts, or the record is inconclusive about whether a movant is entitled to relief. *Id.* (citing *United States v. Tolliver*, 800 F.3d 138, 142–43 (3d Cir. 2015) (remanding for a hearing because of factual disputes between the parties)). No evidentiary hearing is necessary in this matter because the record conclusively shows, as explained below, that Petitioner's claims are without merit.

## 2.  Petitioner's ineffective assistance of counsel claims

In his motion to vacate sentence, Petitioner raises three grounds for relief, all of which involve allegations of ineffective assistance of counsel. ECF No. 1-1. The standard applicable to such claims is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984).   To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient.   This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the

4

'counsel' guaranteed by the Sixth Amendment." *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692–93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697–98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

5

*Judge*, 119 F. Supp. 3d at 280–81. As explained further below, none of the three grounds for relief pass this standard.

In his first ground for relief, Petitioner argues that counsel provided ineffective assistance in "failing" to advise him of the availability of a fact-stipulated plea in November 2013. ECF No. 1-1 at 3–6. Petitioner alleges that, had counsel more fully discussed the original offer with him, he would have been inclined to take the plea. Id. In relation to a guilty plea, counsel is required to provide a defendant with sufficient information that will allow him to "make a reasonably informed decision whether to accept a plea offer," which will generally require counsel to discuss with a petitioner the facts of his case, his likelihood of conviction, and his comparative sentencing exposure at trial and through a plea. *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (quoting *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013); *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012); *Hill v. Lockart*, 474 U.S. 52, 57–58 (1985). However, even where a petitioner shows that counsel did not provide adequate advice, he still must show that he was subsequently prejudiced by the failure to provide advice. This requires the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," which "[i]n the context of pleas [requires] a [petitioner to] show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. Therefore, to make out prejudice in this case, Petitioner must show that, had he been properly advised, he would have accepted the 2013 Plea Agreement, the plea would not have been withdrawn, this Court would have accepted it, and his ultimate sentence would have been less under that plea. *See id.*; *see also Missouri v. Frye*, 566 U.S. 134, 147 (2012); *Hill*, 474 U.S. at 59.

6

In his plea claim, Petitioner asserts that his counsel "rejected"[1] the original, fact-stipulated plea offer that did not contain a sentencing recommendation or stipulated guideline range without discussing the matter with him, and that, had she discussed it with him, he would have taken that plea. ECF No. 1-1 at 3.

The record clearly shows this assertion is false. In fact, shortly after speaking with counsel regarding the original offer, Petitioner sent her a letter, dated November 20, 2013, and received by the Federal Public Defender's office on November 25, 2013, in which Petitioner specifically acknowledged that he spoke with counsel regarding the open plea offer and stated the following: "although I want to plead and get this all cleared up, we just can't take an open-ended plea; that would be like writing a blank check." ECF No. 23-3. Petitioner further encouraged counsel to "see if we can't lock them into a specific guideline level and range, hopefully level 24 with a 100 to 125 month range," and stated that he was "with [her] one-thousand percent." Id.

The following day, Petitioner sent another letter again confirming that he wanted a plea deal which "lock[ed] them into whatever guideline range" so that he could plead guilty under such a plea. ECF No. 23-4. Just over a month later, on December 29, 2013, Petitioner sent another letter to counsel in which he directly stated that counsel should know that he "cannot accept what they offered because I could get slammed with 20 years and … have no legal recourse, appeal-wise." ECF No. 23-5. Petitioner further stated he would "plead guilty tomorrow" if he were offered a plea with a guideline level of 24. Id. Although Petitioner apparently regretted his decision to not accept

---

[1] Petitioner and counsel agree that they both chose to attempt to counter-offer the plea agreement. *See* ECF No. 23-1 at 3, ¶ 9.   However, counsel contends that she never actually rejected the open plea, and instead left it on the table, hoping the Government would still have accepted the original plea if a better offer could not be negotiated prior to the Government's notice of intent to seek a three-strikes enhancement in January 2014.   *See* id. at 3–4, ¶¶ 8, 10.

the original plea offer *after* it expired (*see, e.g.*, ECF No. 27 at 62–64),[2] the letters that he sent *during the time when the plea offer was available* clearly demonstrate that Petitioner had no intention of accepting the offered, fact-stipulated plea. Indeed, Petitioner's contemporaneous letters both confirm that he understood the terms of the fact-stipulated plea, understood his potential sentencing exposure under that plea as a career offender, and that he had no intention of accepting it and specifically advised counsel that he would not accept such a plea. *See* ECF Nos. 23-3, 23-4, 23-5. As Petitioner was clearly not interested in the original, fact-stipulated plea when that offer was available, Petitioner cannot show that he would have accepted the plea offer and thus cannot show that he was prejudiced by counsel's alleged failings. Therefore, Petitioner's first ground for relief is without merit. *See Lafler*, 566 U.S. at 163–64.

Petitioner also raises, for the first time in a supplemental submission (and about one year after his reply), an "omission" from his earlier filings to supplement his first point. ECF No. 29. According to Petitioner, his attorney attended a meeting with the Government on April 8, 2016, to discuss Petitioner's designation as a career offender, at which time counsel purportedly "admitted to the Government that she had mistakenly told [Petitioner] in 2013 that [he] could never face a life sentence" and "told both federal prosecutors that she believed she had rendered ineffective assistance of counsel … by her misstatement of the law." *Id.* at 4. Counsel purportedly relayed the details of this meeting to Petitioner when visting him three days after the meeting occurred. *Id.*

According to Petitioner, if either he or counsel had "known there was a possibility I could

---

[2] Petitioner supplies a letter allegedly sent to counsel in April 2014, after the original plea had expired, wherein he asserts that counsel never discussed the original plea with him and that he would have accepted the original plea agreement if he had the chance. Id. Although this letter indicates hindsight regret after the expiration of the original plea, there is no indication that Plaintiff was willing to accept the original offer when it was still available.

face a life term upon rejection of the[] initial 'open' plea offer of November 8, 2013, … it is an almost certainty that [counsel] would have accepted, or advised [Petitioner] to accept, the Government's open 0-to-20 year plea offer." *Id.*

There are multiple issues with this argument. The first is procedural. The argument—conceded by Petitioner to have been known to him well before he filed his initial Petition and reply (ECF No. 29 at 3)—is raised for the first time well after briefing, and is thus not properly before the Court. *Morey v. Rodriguez*, No. CV 17-56, 2018 WL 2427122, at *2 (D.N.J. May 29, 2018) (argument raised for the first time in reply need not be considered); *Judge v. United States*, 119 F. Supp. 3d 270, 284 (D.N.J. 2015) (collecting cases).

Even setting aside the issue of timeliness, the argument fares no better substantively because, even if counsel effectively admitted tendering ineffective assistance, the prejudice still remains lacking. That is, the record demonstrates that for Petitioner, even the possibility of a twenty-year sentence under the initial offer was considered tantamount to a life sentence. As discussed above, numerous letters from Petitioner to counsel show Petitioner's unease with an open-ended plea as a "blank check" which waived the right to appeal and sought to "lock [the Government] into a specific guideline level and range." ECF No. 23-3 at 2; ECF No. 23-5 at 2 ("I cannot accept…because I could get slammed with 20 years and I would have no legal recourse, appeal-wise."). Notes from defense counsel dated April 16, 2014, invoked the Government's "filing notice of 3 strikes," meaning that Petitioner had "one opportunity to not spend life in prison." ECF No. 23-9 at 3. Another undated counsel note indicates that Petitioner "does not want to die in jail," noting that ("60 (+20 = 80)"); in other words, that the possibility of a twenty-year sentence could amount to a life sentence because he was already sixty years old. ECF No. 23-8 at

2.

Accordingly, Petitioner's supplemental submission does not alter the Court's conclusion with respect to Petitioner's first ground for relief: that even if counsel had been ineffective—which is belied by the record—the outcome would not have been different.

In his second ground for relief (ECF No. 1-1 at 7–10), Petitioner contends that counsel proved ineffective in failing to object to the Government's notice of intention to seek an enhanced three-strikes penalty both as untimely and as a violation of the Supreme Court's decision in *Bordenkircher v. Hayes*, 434 U.S. 357 (1978). First, the Court will analyze the timeliness of the Government's notice of intent to seek an enhanced penalty under the three-strikes provision of 18 U.S.C. § 3559(c). This provision sets only one limit on the timeline for seeking such an enhancement: the Government is required to follow 21 U.S.C. § 851(a). *See* 18 U.S.C. § 3559(c)(4). Pursuant to 21 U.S.C. § 851(a)(1), in order to seek a three-strikes enhancement, the Government must "before trial, or before the entry of a plea of guilty … file[] an information with the court (and serve[] a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon" in seeking the enhancement. Here, counsel was provided notice of the intent to file an enhanced penalty information in January 2014 (ECF No. 23-1 at 4, ¶ 12), over a year before the enhanced penalty information was filed in May 2015 (Docket No. 15-225 at ECF No. 29) and over two years before Petitioner ultimately pleaded guilty in May 2016 (Docket No. 15-225 at ECF No. 41). Indeed, even the superseding enhanced penalty information, filed in March 2016, was filed and served months before Petitioner's guilty plea. Docket No. 15-225 at ECF No. 33. Thus, the Government's filing of the two enhanced penalty informations were both timely under the applicable statutes as they were filed and served *before*

10

Petitioner pleaded guilty or chose to proceed to trial. *See* 18 U.S.C. 3559(c)(4); 21 U.S.C. § 851(a)(1). Therefore, Petitioner suffered no prejudice from counsel's failure to object on timeliness grounds because any objection would have been meritless. *See United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011) (dismissing petitioner's ineffective assistance of counsel claim because he failed to establish prejudice).

Next, the Court addresses Petitioner's argument that counsel should have moved to dismiss the enhanced penalty information as violating *Bordenkircher*, 434 U.S. 357. Petitioner asserts that *Bordenkircher* stands for the proposition that the Government, in order to seek an enhanced penalty following an expired plea, must give notice or threaten the enhanced penalty *before* the expiration of the original plea offer in order for the enhanced penalty to comport with Due Process. ECF No. 1-1 at 7. *Bordenkircher*, however, stands for no such proposition. Instead, the Court held that Due Process is not violated when the Government seeks enhanced penalties as part of plea negotiations "so long as the prosecutor has probable cause to believe" the enhancement or higher criminal offense is warranted and the charging is "[w]ithin the limits set by the legislature's constitutionally valid definition" of an enhancement or chargeable offense. 434 U.S. at 364–65. Thus, under *Bordenkircher*, a prosecutor may file additional charges or seek enhanced penalties as a means of inducing a guilty plea so long as the charges or enhancement are warranted by probable cause and not based on an impermissible category such as race, religion, or the like. *Id. Bordenkircher* does not stand for the proposition Petitioner ascribes to it, and any motion on that basis by counsel would have failed because Petitioner was eligible for the three-strikes enhancement in this matter. Therefore, Petitioner was not prejudiced by counsel's decision not to object to the enhancement, and his second ground for relief lacks merit. *See Aldea*, 450 F. App'x at 152.

11

In his third and final ground for relief, Petitioner asserts that his counsel proved ineffective in failing to move to dismiss the indictment against him on a theory of vindictive prosecution, as he believes that the Government filed the enhanced penalty information in retaliation for his failure to accept the original, fact-stipulated plea agreement. ECF No. 1-1 at 10–18. The Supreme Court has held that the Government engages in vindictive prosecution if it improperly punishes an individual for his decision to exercise his legal rights. *United States v. Goodwin*, 457 U.S. 368, 372 (1982); *Bordenkircher*, 434 U.S. at 363. To make out a claim of vindictive prosecution, a petitioner must either "offer proof of 'actual vindictiveness'" or, in the absence of proof, may create a "presumption of vindictiveness" where a "reasonable likelihood of vindictiveness" exists. *United States v. London*, 747 F. App'x 80, 83 (3d Cir. 2018) (citing *United States v. Esposito*, 968 F.2d 300, 303 (3d Cir. 1992). "No such presumption applies," however, "in the context of plea bargaining." *Id.* In the "give and take of plea bargaining, there is no … element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Id.* (quoting *Bordenkircher*, 434 U.S. at 363); *see United States v. Ponder*, 738 F. App'x 114, 117 (3d Cir. 2018) (finding no presumption of vindictiveness where the government made pretrial decision to file a superseding indictment expanding the scope of the charge). Therefore, for Plaintiff to proceed on a claim of vindictive prosecution relating to the Government's decision to file enhanced penalty information during plea bargaining, he must show evidence of actual vindictiveness. *See London*, 747 F. App'x at 83; *Ponder*, 738 F. App'x at 117.

Here, Petitioner provides no evidence of actual vindictiveness, and relies upon the timing of the enhanced penalty information to support his claim of vindictiveness. However, "in the pretrial setting, where 'the prosecutor's assessment of the proper extent of prosecution may not

have crystallized,' timing alone cannot support a vindictive prosecution claim." *Ponder*, 738 F. App'x at 117 (quoting *Goodwin*, 457 U.S. at 381). Moreover, evidence in the record indicates that the enhanced penalty was not the result of vindictiveness but was the result of Petitioner's engagement in further criminal activity, which eventually resulted in a proffer session with the Government. *See, e.g.*, ECF No. 23-1 at 4–5. Therefore, Petitioner's third ground for relief, whether construed as ineffective assistance or direct vindictive prosecution, is without merit.

Consequently, the Court finds that Petitioner was not denied effective assistance of counsel, and there are no grounds to vacate his sentence under § 2255.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a § 2255 petitioner may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason could not disagree with this Court's conclusion that Petitioner's claims are all clearly without merit, Petitioner has failed to make a substantial showing of the denial of a constitutional right, and no certificate of appealability shall issue.

## C.   Motion to appoint counsel

Petitioner filed his motion for the appointment of pro bono counsel together with his supplemental brief; that is, well after briefing had already been completed.   Petitioner's motion is moot based on the discussion above. However, even if Petitioner had made the request earlier, he

would nevertheless have failed to satisfy the non-exhaustive factors set forth in *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993), namely: (1) plaintiff's ability to present his case; (2) the difficulty of the legal issues; (3) the degree to which factual investigation will be necessary and plaintiff's ability to pursue investigation; (4) plaintiff's capacity to retain counsel on his own behalf; (5) the extent to which the case will turn on credibility determinations; and (6) whether the case will require testimony from an expert witness."). There is a sufficient record, and the issues are sufficiently straightforward (and argued ably by both parties), such that counsel would not have been necessary or justified.

## IV. CONCLUSION

For the reasons stated above, Petitioner's motion to vacate sentence is DENIED and Petitioner is DENIED a certificate of appealability.   Petitioner's motion for the appointment of counsel (ECF No. 29) is DENIED.   An appropriate order follows.

DATE: August 31, 2022

*s/ Claire C. Cecchi*
Hon. Claire C. Cecchi, U.S.D.J.

14